Lynn MARTIN, Secretary of Labor,
United States Department of
Labor, Plaintiff,

v.

LOCAL 412, INTERNATIONAL ALLI-
ANCE OF THEATRICAL STAGE EM-
PLOYEES AND MOVING PICTURE
MACHINE OPERATORS OF THE
UNITED STATES AND CANADA, AFL-
CIO, Defendant.

No. 91–648–CIV–T–99B.

United States District Court,
M.D. Florida,
Tampa Division.

March 11, 1993.

Gary John Takacs, U.S. Attorney's Office, Tampa, FL, William H. Berger, U.S. Dept. of Labor, Office of the Sol., Atlanta, GA, for plaintiff.

Mark Frederick Kelly, Kelly, McKee, Herdman & Ramus, P.A., Tampa, FL, for defendant.

## MEMORANDUM OPINION

EDWIN L. NELSON, District Judge.

This matter was tried before the Court sitting without a jury on December 9, 1992, based upon the complaint of the Secretary of Labor, which alleged that defendant Local 412, International Alliance of Theatrical Stage Employees and Moving Picture Machine Operators of the United States and Canada, AFL–CIO (IATSE), had violated Section 401(e) of the Labor–Management Reporting and Disclosure Act (LMRDA), 29 U.S.C. § 481(e), in the conduct of its December 2, 1990, union officer election.

More specifically, the Secretary alleged that a candidate was allowed to run for President, who was a manager in his place of employment, and otherwise not eligible to

run for office pursuant to Article Twenty-one, Section 15 of the IATSE International Constitution which provides:

*Section 15* **Members Becoming Managers** Any member of this Alliance who accepts a position as manager in any place of amusement, except where the duties of such person shall also be those of a projectionist or stage employee, shall not be allowed voice or vote in any local union while holding such position; but the local union of which the person is a member may at its discretion permit the member of retain his or her membership therein.

The following represents the Court's Findings of Fact and Conclusions of Law as reflected in the Court's ruling from the bench, following the trial on December 9, 1992.

Under Section 401(e) of the LMRDA, the Secretary of Labor is authorized to bring an action to compel a labor union to comply with the provisions of the labor union's Constitution and Bylaws in the conduct of its union officer election. This case, unlike that of *Brock v. Writers Guild of America, West, Inc.*, 762 F.2d 1349 (9th Cir.1985), does not involve an attempt by the Secretary of Labor to impose qualifications for the holding of union office upon union members that are not otherwise spelled out in the union's Constitution or Bylaws. Rather, this is simply an action to compel the union to comply with its Constitution, which, as already noted, is cognizable under Section 401(e) of the LMRDA, when an election is conducted in contravention of the Constitution.

In this particular case, the individual involved, Mr. Victor Meyrich, has served as President of Local 412 for a number of years. He was reelected to that position in Local 412's December 1990 election. The protest that led to this lawsuit was filed by Mr. Franz von Mann, a member of Local 412, who alleged that Mr. Meyrich was a manager at his place of employment and therefore ineligible to run for or serve as President under Article Twenty-one, Section 15 of IATSE's International Constitution.

Thus, there appears to be two issues to be resolved: 1) was Mr. Meyrich a manager at his place of employment and thus ineligible to have voice or vote in the affairs of the union pursuant to the union's Constitution; and 2) whether the International Union's interpretation or application of Article Twenty-one, Section 15, to Mr. Meyrich's circumstances was fair and reasonable.

■ With respect to the first issue, the Court is of the opinion that the Department of Labor's interpretive position found at 29 C.F.R. § 452.47, entitled Employer or Supervisor Members, provides guidance in determining whether a person is a supervisor or manager. That position suggests and the Court agrees, that the Court should look in part to the question of whether there is a conflict of interest on the part of the alleged supervisor in carrying out his duties, both as union President and as an employee of the Asolo Center for the Performing Arts.

Stated another way, the Court must decide whether, in this case, Mr. Meyrich would be required to act in a manner which would benefit his local union but which would be detrimental to his employer, or if in acting on behalf of his employer, he would be required on occasion to make decisions which would be beneficial to the employer but perhaps detrimental to the union. In other words, would he have to choose between two masters? That seems to the Court to be, at least in part, a reasonable basis for deciding whether the Constitutional provision at issue would apply to him.

In this connection, Mr. Lee Warner, Executive Director of the Asolo Center, testified that in dealing with Mr. Meyrich as Production Supervisor, there were times when Mr. Meyrich could not be included in management meetings because some matters discussed at the meetings related to dealings with Local 412. There was one particularly sensitive matter that arose concerning the Asolo Center's response to a possible strike threat by the union, which severely hampered management's approach because of Mr. Meyrich's forced absence since he was also union President.

It is precisely these types of conflicts of interest that the Department of Labor's position was meant to deal with and the Court finds that the conflicts present here are significant enough to disqualify Mr. Meyrich

from running for or holding union office pursuant to IATSE's International Constitution.

Another suggestion found in 29 C.F.R. § 452.47 is that the Court look to the definition of "supervisor" under the Taft–Hartley Act, 29 U.S.C. § 152(11) to determine if, when a union Constitution so provides, an alleged supervisor is disqualified to run for or hold union office. That definition refers to or describes a supervisor as one who, in the interest of the employer, has the authority to hire, transfer, suspend, layoff, recall, promote, discharge, assign, reward, or discipline other employees, or responsibly direct them, or to adjust their grievances, or effectively to recommend such action, provided that the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment.

The evidence adduced at trial shows that Mr. Meyrich is both the Director of the Asolo Scenic Studio and the Production Supervisor of the Asolo Center. The position of Director of the Scenic Studio, while at one time substantial, is a relatively small job now and was so at the time of the 1990 election. On the other hand, the Production Supervisor of the Asolo Center has four sub-offices, branches, departments, or whatever you might want to call them, consisting of the back stage, the scenic shop, maintenance, and costumes, each of which has its own department head.

The job description for Production Supervisor provides that the supervisor is expected to spend about 30% of his time maintaining production schedules, approximately 25% advising departments on building techniques, and 20% maintaining buildings and equipment, although the evidence is pretty clear that this last percentage is now lower. He also spends some 10% of his time purchasing equipment and supplies, another 10% maintaining accounts, and 5% in other duties, which is now somewhat higher.

In the narrative form, the job description states that the Production Supervisor is: "Responsible for all overall physical aspects of the Asolo Theater operations; including sets, lights, props, sound, vehicles, buildings, and equipment. Hire all technical staff, maintain accounts and keep all items within budget. Advise production stage manager on all scheduling of the main season. Advise Artistic Director on hiring Designers, Sets, and Lights."

Two witnesses from the Asolo Center, Lee Warner, Executive Director, and Donna Gerdes, Business Manager, testified, and Mr. Meyrich never disputed, that he has authority in the area of hiring persons and discharging them—although not many people are discharged—and suspensions and layoff, but there is some question as to whether there are any suspensions or laying off of individuals in the traditional sense since, when the job is over, it's over. He also has authority to assign work, including overtime, to discipline persons, direct their work, and transfer persons within departments under his control or supervision.

The Court also finds significant evidence that for pay and benefit purposes, Mr. Meyrich is treated as a manager. Ms. Gerdes testified that he receives and is credited with vacation and sick pay time in advance. He also has 100% participation in the health plan of the organization while department heads and lower supervisors do not.

Mr. Meyrich testified that he views himself more in the role of—he used the word "coordinator"—one who carries out decisions made by others. He conceded, however, that he clearly does not qualify under one of the two exceptions in Article Twenty-one, Section 15, i.e., projectionist. And he stated that the stage work (the other exception) that he does perform is limited to some 3%. While that percentage is an estimate, the important thing is that regardless of whether it's 2%, 3%, 4%, or 5%, that work is incidental to Mr. Meyrich's main functions in his role as Production Supervisor, which the Court finds meets the definition of a supervisor within the meaning of that term under the Taft–Hartley Act.

Accordingly, as a supervisor or manager, Mr. Meyrich falls within the category of persons who are prohibited from running for or holding union office under IATSE's International Constitution. As the Ninth Circuit held in *Brock v. Writers Guild*, 762 F.2d at 1357, the Secretary has authority to regulate

"candidacy qualifications which a *union* may require through its Constitution and Bylaws" (emphasis the court's), including "a qualification prohibiting the eligibility of supervisor candidates...." *Id. Accord, Martin v. Branch 419, Nat. Ass'n. of Letter Carriers,* 965 F.2d 61, 66 (6th Cir.1992).

■ On the second issue, Local 412 asserts that, in response to Mr. von Mann's internal union protest, IATSE International President Alfred W. DiTolla responded by letter dated April 4, 1991, rejecting the protest in these words:

> From your own description of the position of the Local's president at the Asolo Theater, it does not appear as though Article Twenty-one, Section 15, bars him from holding office in the Local. The Section, by its terms, is not applicable to any manager who also acts as a stage employee or projectionist. Supervisors and department heads are, therefore, generally not covered by the prohibition. The power to hire and fire is not determinative for the purpose of Article Twenty-one, Section 15. Absent an allegation that the president is acting solely and exclusively as a manager, your appeal must be dismissed.

The Court accepts the proposition that it "is bound to accept the interpretation placed on the Constitution by the [International Union] if it is fair and reasonable." *Local 317 v. Nat. Post Office Mail Handlers,* 696 F.2d 1300, 1302 (11th Cir.1983).

In this case, however, viewing the DiTolla letter on its own terms, it certainly appears to the Court that Mr. DiTolla did not make any investigation of the particular circumstances in order to apply the said Article Twenty-one, Section 15 rule to the circumstances of Mr. Meyrich's case. On its face, the letter shows that Mr. DiTolla simply looked at the section itself and decided that in the absence of an allegation that Mr. Meyrich was solely and exclusively a manager, he should not be disqualified from service as the Local President.

■ This is clearly not the intent of Section 402(a) of the LMRDA, 29 U.S.C. § 482(a), which requires internal union exhaustion prior to complaining to the Secretary of Labor. Rather, the International Union has some obligation to make a reasonable effort to determine the actual circumstances of a complaint, and then to apply its rule in the context of those circumstances as it finds them. See *Donovan v. Mo. Pac. System Fed. Joint Protective Bd.,* 737 F.2d 445, 449 (5th Cir.1984) ("Unions are expected to 'provide responsible and responsive procedures for investigating and redressing members' election grievances' "). Here, no investigation of the facts was made, and it appears to the Court that the appeal of Mr. von Mann was rejected out of hand; that was unfair and unreasonable.

Since it is the ruling of the Court that Local 412 violated Section 401(e) of the LMRDA in the conduct of its December 1990 election for President, an Order requiring an election for President of Local 412, to be supervised by the Secretary of Labor, shall be entered accordingly.