32 F.3d 512
 147 L.R.R.M. (BNA) 2299, 128 Lab.Cas. P 11,180
 Robert REICH, Secretary of Labor, United States Department
of Labor, Plaintiff-Appellee,
v.
INTERNATIONAL ALLIANCE OF THEATRICAL STAGE EMPLOYEES AND
MOVING PICTURE MACHINE OPERATORS OF the U.S. AND
CANADA, AFL-CIO, Defendant-Appellant.
 No. 93-2265.
 United States Court of Appeals, Eleventh Circuit.
 Sept. 16, 1994.
 
 Mark F. Kelly, Tampa, FL, for appellant.
 Sharon E. Hanley, Helene Boetticher, U.S. Dept. of Labor, Office of Sol., Washington, DC, for appellee.
 Appeal from the United States District Court for the Middle District of Florida.
 Before COX and DUBINA, Circuit Judges, and CLARK, Senior Circuit Judge.
 CLARK, Senior Circuit Judge:
 
 
 1
 The Secretary of Labor brought this action under Title IV of the Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C. Sec. 401 et seq., against appellant Local 412, International Alliance of Theatrical Stage Employees and Moving Picture Machine Operators of the United States and Canada, AFL-CIO ("Local 412"). The Secretary alleged that Local 412 violated section 401(e) of the Act (29 U.S.C. Sec. 481(e)) in the conduct of its election of officers on December 2, 1990, by allowing ineligible candidates to run for and hold union office. Specifically, the Secretary challenged the election of Victor Meyrich as President, contending that Meyrich was a manager in his place of employment and, therefore, was not eligible to run for office under the terms of the Constitution of the International Alliance of Theatrical Stage Employees and Moving Picture Machine Operators of the United States and Canada, AFL-CIO (the "IATSE International"). Following a nonjury trial, the district court held that Meyrich fell within the category of persons prohibited from running for or holding union office under the IATSE International's Constitution; accordingly, the district court ordered an election for President of Local 412, to be supervised by the Secretary, 815 F.Supp. 441. We affirm.
 
 BACKGROUND FACTS
 
 2
 Victor Meyrich has served as President of Local 412 for a number of years. He was reelected to that position in Local 412's December 2, 1990 election. Meyrich is, and at the time of the December 1990 election was, the Production Supervisor for the Asolo Center for the Performing Arts.[1] The job description for the Production Supervisor provides: "Responsible for all overall physical aspects of the Asolo Theater operations; including sets, lights, props, sound, vehicles, buildings, and equipment. Hire all technical staff, maintain accounts and keep all items without budget. Advise production stage manager on all scheduling of the main season. Advise Artistic Director on hiring Designers, Sets, and Lights." The job description further provides that the Production Supervisor is expected to spend approximately 30 percent of his time maintaining production schedules, 25 percent of his time advising departments on building techniques, 20 percent of his time maintaining buildings and equipment, 10 percent of his time purchasing equipment and supplies, 10 percent of his time maintaining accounts, and 5 percent of his time on other duties. Meyrich spends approximately three percent of his time performing stage work; any such work is only incidental to his functions as Production Supervisor.
 
 
 3
 Under the Production Supervisor are four departments: backstage, the scenic shop, maintenance, and costumes--each with its own department head. These four department heads report to Meyrich. Meyrich has the authority to hire, fire, and discipline employees in these departments, as well as the authority to assign and direct work and to transfer employees between the four departments. Meyrich receives managerial employee benefits that non-managers at the Asolo Center do not receive. Specifically, he receives and is credited with vacation and sick time in advance, and he has 100 percent participation in the health insurance plan. Because of his position as Production Supervisor, Meyrich is not a part of Local 412's bargaining unit.
 
 
 4
 Although Meyrich's position as President of Local 412 does not normally interfere with his duties as Production Supervisor, a conflict does arise during contract negotiations between the Asolo Center's management and the union. The Production Supervisor would ordinarily participate in such negotiations on behalf of management. Meyrich does not participate because he is President of Local 412. Meyrich's position as President of Local 412 has also prevented him from participating with management in the preparation of a strike plan in response to a union strike threat.
 
 
 5
 Following the December 1990 Local 412 elections, when Meyrich was again elected President, Local 412 member Franz van Mann filed an election protest alleging that Meyrich was prohibited from holding union office under Article Twenty-one, Section 15 of IATSE International's Constitution. That section provides:
 
 Section 15. Members Becoming Managers
 
 6
 Any member of this Alliance who accepts a position as manager in any place of amusement, except where the duties of such person shall also be those of a projectionist or stage employee, shall not be allowed voice or vote in any local union while holding such position; but the local union of which the person is a member may at its discretion permit the member to retain his or her membership therein.[2]
 
 
 7
 IATSE International President Alfred Ditolla rejected van Mann's protest in a letter that reads, in pertinent part:
 
 
 8
 From your own description of the position of the Local's President at the Asolo Theatre, it does not appear as though Article Twenty-one, Section 15 bars him from holding office in the Local. The Section, by its terms, is not applicable to any manager who also acts as a stage employee or projectionist. Supervisors and department heads are, therefore, generally not covered by the prohibition. The power to hire and fire is not determinative for the purpose of Article Twenty-one, Section 15. Absent an allegation that the President is acting solely and exclusively as a manager, your appeal must be dismissed.[3]
 
 
 9
 After the union rejected his protest, van Mann filed a complaint with the Secretary of Labor. The Secretary investigated the complaint and found probable cause to believe that Local 412 had violated section 401(e) of the Act (29 U.S.C. Sec. 481(e)) by allowing ineligible candidates to run for and hold union office. The Secretary then initiated this action pursuant to 29 U.S.C. Sec. 482(b).[4] Following a nonjury trial, the district court rendered a decision in favor of the Secretary. Local 412 filed this appeal.
 
 DISCUSSION
 
 10
 Following a union election, any member of the union, after exhausting internal remedies, may file a complaint with the Secretary "alleging the violation of any provision of section 481 of [title 29] (including violation of the constitution and bylaws of the labor organization pertaining to the election and removal of officers)."[5] The Secretary is obligated to investigate the complaint and, if he finds probable cause to believe a violation of Sec. 481 has occurred, file a civil action to set aside the invalid election. Section 481 of title 29 sets out procedures by which labor organizations must conduct officer elections. Subsection 481(e) provides, in pertinent part: "The election shall be conducted in accordance with the constitution and bylaws of such organization insofar as they are not inconsistent with the provisions of this subchapter." Thus, the Secretary is obligated to file suit if he concludes that a union has failed to conduct its officer elections in accordance with its constitution. In reviewing the Secretary's claim, a court must accept the interpretation placed on the constitution by the union if that interpretation is fair and reasonable.[6]
 
 
 11
 In this case, the Secretary contends, and the district court concluded, that Local 412 failed to conduct its December 2, 1990 elections in accordance with Article Twenty-one, Section 15 of IATSE International's Constitution because it permitted Meyrich, a manager, to run for and hold the office of President. In challenging the district court's conclusion, Local 412 first argues that Meyrich is not a manager. This argument is without merit. Meyrich is over four departments with authority to hire, fire, transfer, discipline, and assign work to the employees in these departments. He is responsible for the "overall physical aspects" of the theater, including staffing and budget. He also receives managerial benefits, unlike his subordinates. Meyrich even admitted during his trial testimony that he was a "[s]upervisor or manager."[7] Our conclusion is also supported by the district court's finding that Meyrich is subject to a conflict of interest in carrying out his duties for the union, on the one hand, and his employer, on the other. Specifically, were it not for his position as President of Local 412, Meyrich would participate on behalf of management both in contract negotiations with the union and in the preparation of strike plans in response to union strike threats. We find that the evidence supports the district court's conclusion that Meyrich is a manager.
 
 
 12
 Local 412's next argument is that, even if Meyrich is a manager, he does not fall within the disqualification set out in Article Twenty-one, Section 15 of the Constitution because he does not function solely as a manager. Section 15 disqualifies any member "who accepts a position as manager ... except where the duties of such person shall also be those of a projectionist or stage employee."[8] Local 412 and IATSE International interpret the clause beginning with "except" to mean that the disqualification applies only if the member's work is exclusively managerial in nature. They contend that, because Meyrich spends three percent of his time performing stage work, his work is not exclusively managerial, and, therefore, he is not disqualified under Article Twenty-one, Section 15 of the Constitution. We are bound to accept this interpretation if it is reasonable. We find that it is not. In interpreting a labor union's constitution, both the union and the court should follow the settled rules of statutory construction.[9] One of these rules is that the constitution "must, if possible, be construed in such fashion that every word has some operative effect."[10] Under the union's interpretation of Section 15, any manager who performed the work of his subordinates, no matter how infrequently or how incidental the work to his duties as manager, could avoid disqualification. This interpretation renders Section 15 meaningless and, therefore, violates that rule of statutory construction quoted above. We reject the union's interpretation as unreasonable. Meyrich's occasional performance of stage work, which work is only incidental to his duties as a manager, does not bring Meyrich within the exception to disqualification under Section 15.
 
 
 13
 Finally, Local 412 argues that the Secretary lacks authority to seek to invalidate a union election on the grounds that the union permitted managers or supervisors to seek and hold office. In support of this argument, Local 412 relies on Brock v. Writers Guild of America, West, Inc.,[11] in which the Ninth Circuit held that the Secretary was not authorized to challenge a union's decision to permit supervisors to participate as candidates in a union election. Writers Guild is distinguishable from the case before us. The union constitution in Writers Guild, unlike IATSE International's Constitution, did not impose any restrictions on supervisorial candidacy for office. The Secretary could not, then, allege a violation of Sec. 481(e). Rather, the Secretary took the position that 29 U.S.C. Sec. 481(c), which requires unions to provide "[a]dequate safeguards to insure a fair election," authorized him to intervene and set aside a union election based upon the participation of supervisors as candidates. The Ninth Circuit rejected the Secretary's position, holding Sec. 481(c) did not authorize the Secretary to impose upon unions substantive requirements concerning the eligibility of candidates for union election.[12] In so holding, the Ninth Circuit distinguished the cases, like the one before us, in which a union had violated Sec. 481(e) by disregarding its own constitutional requirements concerning the eligibility of candidates.[13] In such cases, the Secretary is not only authorized, but is obligated, to seek to remedy the Sec. 481(e) violation.
 
 CONCLUSION
 
 14
 For the reasons explained above, the decision of the district court is AFFIRMED.
 
 
 
 [1]
 Meyrich also serves as Director of Asolo's Scenic Studio, but most of his time is spent performing his duties as Production Supervisor
 
 
 [2]
 R1-7 Exh. B
 
 
 [3]
 Id. at Exh. C
 
 
 [4]
 29 U.S.C. Sec. 482(b) provides, in pertinent part:
 The Secretary shall investigate such complaint and, if he finds probable cause to believe that a violation of this subchapter has occurred and has not been remedied, he shall, within sixty days after the filing of such complaint, bring a civil action against the labor organization as an entity in the district court of the United States in which such labor organization maintains its principal office to set aside the invalid election, if any, and to direct the conduct of an election or hearing and vote upon the removal of officers under the supervision of the Secretary and in accordance with the provision of this subchapter and such rules and regulations as the Secretary may prescribe.
 
 
 [5]
 29 U.S.C. Sec. 482(a)
 
 
 [6]
 Local 317, National Post Office Mail Handlers v. National Post Office Mail Handlers, 696 F.2d 1300, 1302 (11th Cir.1983); see also 29 C.F.R. Sec. 452.3 (1993) ("The interpretation consistently placed on a union's constitution by the responsible union official or governing body will be accepted unless the interpretation is clearly unreasonable.")
 
 
 [7]
 R3-35
 
 
 [8]
 R1-7 Exh. B (emphasis added)
 
 
 [9]
 See Local 317, National Post Office Mail Handlers, 696 F.2d at 1302
 
 
 [10]
 United States v. Nordic Village, Inc., --- U.S. ----, ----, 112 S.Ct. 1011, 1015, 117 L.Ed.2d 181 (1992)
 
 
 [11]
 762 F.2d 1349 (9th Cir.1985)
 
 
 [12]
 Id. at 1359
 
 
 [13]
 Id. at 1357-1358